UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

FERMIN MENDOZA;
FRENCHMAN HILL
APARTMENTS RESIDENT
ASSOCIATION,

      Plaintiffs,

      v.

FRENCHMAN HILL
APARTMENTS LIMITED
PARTNERSHIP; CAMBRIDGE
MANAGEMENT, INC.; HOUSING
AUTHORITY OF GRANT
COUNTY; JOHN POLING, in his
official capacity as Executive
Director of the Housing Authority of
Grant County; WASHINGTON
STATE HOUSING FINANCE
COMMISSION; KIM HERMAN in
his official capacity as Executive
Director of the Washington State
Housing Finance Commission,

      Defendants.

NO.  CV-03-494-RHW

**ORDER DENYING IN PART
AND GRANTING IN PART
PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT**

Before the Court is Plaintiffs' Motion for Summary Judgment (Ct. Rec. 31).

A hearing on the above motion was held on January 6, 2005, in Spokane,

Washington.  The Plaintiffs were represented by Judith Lurie and Stephen

Frederickson.  Defendants Washington State Housing Finance Commission and

Kim Herman (the "Commission") were represented by John Nelson.  Defendants

Frenchman Hill Apartments Limited Partnership, Cambridge Management, Inc.,

Housing Authority of Grant County, and John Poling were represented by Thomas

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS'
MOTION FOR  SUMMARY JUDGMENT * 1**

Ahearne.

The Plaintiffs seek partial summary judgment that: (1) the Washington State Housing Finance Commission and the Frenchman Hill Apartments Limited Partnership ("FHA Partnership") violated 26 U.S.C. § 42(h)(6) by failing to have in place an agreement expressly prohibiting the eviction of low-income residents without good cause; and (2) that the FHA Partnership and the management of the Frenchman Hill Apartments violated the due process clause by attempting to terminate the Mendoza family's tenancy without good cause.  The Plaintiffs allege that both claims are enforceable through 42 U.S.C. § 1983 and seek declaratory and injunctive relief.

For the reasons stated herein, the Court *sua sponte* grants summary judgment in the Defendants' favor on the claim for relief under 26 U.S.C. §42(h)(6), and grants Plaintiff's motion for summary judgment, on narrow grounds, on the due process claim.

## Standard of Review

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"Even when there has been no cross-motion for summary judgment, a district court may enter summary judgment *sua sponte* against a moving party if the losing party has had a 'full and fair opportunity to ventilate the issues involved in the matter.'"  *Gospel Missions of America v. City of Los Angeles*, 328 F.3d 548,

//

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS' MOTION FOR  SUMMARY JUDGMENT * 2**

553 (9th Cir. 2003) (citing *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir. 1982)).

**Facts**

Defendant Fermin Mendoza and his family are residents of the Frenchman Hill Apartments (the "Apartments"), located in Royal City, Washington.  On August 27, 2000, Mr. Mendoza entered into a six-month lease that automatically converted to a month-to-month tenancy.  The lease agreement designates his apartment as a low-income housing unit.  On or about November 25, 2003, Mr. Mendoza was served with a 20-day eviction notice, terminating his tenancy effective December 31, 2003.  The notice did not provide any reasons for the termination of his tenancy.[1]

The Apartments are owned by the Defendant Frenchman Hill Apartments Limited Partnership ("FHA Partnership").  The FHA Partnership receives annual tax credits for the Apartments through the Federal Low Income Housing Tax Credit Program, 26 U.S.C. § 42.  One-hundred percent of the 25 housing units at the Apartments are set aside for low-income residents.

The managing general partner of the FHA Partnership is the Defendant Housing Authority of Grant County ("GCHA").  GCHA owns .01 percent of the FHA Partnership, and is the general partner of the Partnership.  The GCHA manages the day-to-day affairs of the FHA Partnership.  The GCHA is a public housing authority and municipal corporation, established pursuant to Wash. Rev. Stat. § 35.82.  The Apartments are managed by Cambridge Management, Inc. ("Cambridge"), a private corporation.  The 99.99% owner of the FHA Partnership

---

[1] The Defendants have since stipulated to a preliminary injunction that prevents the eviction of Mr. Mendoza or other residents of the FHA Apartments. In addition, the Defendants have accepted rent from Mr. Mendoza, voiding the eviction notice.  Therefore, the Plaintiff is not under immediate threat of eviction.

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS'
MOTION FOR  SUMMARY JUDGMENT \* 3**

1   is Related Capital Partners XI, L.P.

2        The Apartments are subject to a "Regulatory Agreement (Extended Use

3   Agreement)," that was executed by the FHA Partnership and the Washington State

4   Housing Commission.  This agreement is intended to serve as the extended low-

5   income housing commitment, required by 26 U.S.C. § 42, for the allocation of low-

6   income housing tax credits.  The agreement, however, does not explicitly prohibit

7   the eviction of tenants from low-income units other than for good cause during the

8   entire extended low-income housing period.

9        Frenchman Hill Apartments Resident Association (the "Association") is a

10  community group made up of tenants of the Frenchman Hill Apartments that was

11  formed to represent the interests of current residents of the apartment complex.

12                              **Discussion**

13  **1.    Mootness**

14       The Defendants assert that the Plaintiffs claims are moot because (1)

15  Defendant Washington State Housing Commission is in the process of complying

16  with the IRS Revenue Ruling 2004-82, which would provide the Plaintiffs with the

17  protections they seek; (2) the FHA Partnership has filed a document confirming

18  that it will comply with the IRS Revenue Ruling 2004-82 as long as that ruling

19  remains in effect; and (3) Plaintiffs have since accepted rent from Mr. Mendoza,

20  thus nullifying the notice for the purpose of the Washington Unlawful Detainer

21  Act.  Wash. Rev. Stat. § 59.12 *et seq.*

22       In order for plaintiffs to have standing to seek an injunction or declaratory

23  relief, they must demonstrate that their claims of continuing injury are not

24  speculative.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).  If plaintiffs

25  cannot show continuing injury, they may nonetheless comply with Article III under

26  the capable of repetition, yet evading review exception to the doctrine of mootness.

27  *See N.A.A.C.P. v. City of Richmond*, 743 F.2d 1346m 1353 (9th Cir. 1984).

28       The Court finds that the issuance of IRS Ruling 2004-82 does not render this

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS'
MOTION FOR  SUMMARY JUDGMENT * 4**

action moot. While the IRS ruling is highly relevant to the situation at hand, it is not binding on this Court. *See Omohundro v. United States*, 300 F.3d 1065, 1068 (9th Cir. 2002). Moreover, the ruling by its own terms only requires compliance within one calendar year. Because the Defendants have not yet fully complied with the ruling and the alleged violations of 26 U.S.C. § 42(h)(6) may continue in the interim, the Court finds that a live controversy still exists.

Furthermore, the acceptance of rent has not mooted this action. *See Housing Resource Group v. Price*, 958 P.2d 327 (Wash. Ct. App. 1998) (holding that if landlord accepts rent with knowledge of prior breach of lease covenant, landlord generally waives right to evict based on that breach). The Defendants only accepted rent from Mr. Mendoza after this lawsuit was filed. If the Defendant's acceptance of rent rendered this action moot, the Plaintiff's claim would fall into the category of situations of wrongs capable of repetition and evading review. "The 'capable of repetition, yet evading review' exception to mootness applies when (1) the challenged action is too short in duration to be fully litigated before cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000).

In *Gallman v. Pierce*, a district court applied the capable of repetition, yet evading review exception to the termination of public housing tenants' leases. 639 F. Supp. 472, 480 (N.D. Cal. 1986). The court explained in *Gallman* that the first prong of the capable of repetition, yet evading review exception review was met because

> month to month tenants receive either a three or a thirty day notice of termination. A period of a month, and certainly three days, is a very brief time in which to litigate unstated reasons for termination, or alleged statutory and constitutional alleged deficiencies in the notice.

Under the Washington Unlawful Detainer Act, a similarly short time frame is involved. *See* Wash. Rev. Stat. § 59.12 *et seq*. Moreover, as in *Gallman*, there can

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT \* 5**

1  be no serious question about the likelihood that the plaintiffs will at some time

2  receive other termination notices.  Accordingly, the Court finds that the capable of

3  repetition, yet evading review exception applies and a justiciable controversy

4  exists.

5  **2.     The Federal Low Income Housing Tax Credit Program**

6       Plaintiffs allege that the Federal Low Income Housing Tax Credit Act, 26

7  U.S.C. § 42, confers individual rights on low income tenants that are enforceable

8  through 42 U.S.C. § 1983.  The Defendants dispute this assertion, arguing that the

9  only remedy for violation of the tax-credit program is revocation of the tax credits

10  by the Internal Revenue Service.

11       **A.     The Duration fo the Good Cause Eviction Requirement**

12       The parties contest whether the good cause eviction requirement applies to

13  the full duration of a housing development's low-income housing commitment, or

14  only during the transitional periods described at 26 U.S.C. § 42(h)(6)(E).  The

15  Court looks to the plain language of the statute, any relevant legislative history and

16  agency interpretation to interpret the statute.

17       The Federal Low Income Housing Tax Credit Program, 26 U.S.C. § 42, was

18  enacted under Congress's taxing and spending powers, to support the development

19  of low-income housing.  In order to receive tax credits, housing developments must

20  enter into long-term commitments to offer low-income housing to qualified

21  persons.  Under 26 U.S.C. § 42(h)(6)(A), "[n]o [tax] credit shall be allowed . . .

22  unless an extended low-income housing commitment is in effect as of the end of

23  such taxable year."

24       An "extended low-income housing commitment" is defined in 26 U.S.C.

25  § 42(h)(6)(B) as an "agreement between the taxpayer and the housing credit

26  agency." An "extended low-income housing commitment" is defined as an

27  agreement between the taxpayer (here, FHA Partnership) and the housing credit

28  agency (here, the Commission) "which prohibits the actions described in

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS'
MOTION FOR  SUMMARY JUDGMENT * 6**

1  subclauses (I) and (ii) of subparagraph (E)(ii).  26 U.S.C. § 42(h)(6)(B)(i)

2  Subparagraph (E)(ii), in turn, provides for certain prohibitions against "eviction or

3  the termination of tenancy (other than for good cause)," 26 U.S.C. §

4  42(h)(6)(E)(ii)(I), and must "allo[w] individuals who meet the income limitations .

5  . . to enforce [the good cause requirement] in any State court." 26 U.S.C. §

6  42(h)(6)(B)(ii).

7        When interpreting a statute, courts must examine the plain language of the

8  statute to "derive meaning from context, and this requires reading the relevant

9  statutory provisions as a whole." *See United States v. Hanousek*, 176 F.3d 1116,

10  1120 (9th Cir.1999) (citations omitted).  Here, the Defendants argue that, based

11  upon the legislative history of section 42, 26 U.S.C. § 42(h)(6)(B)(i) implicitly

12  incorporates the limitations contained in subsections (h)(6)(E)(I) and (II), and

13  therefore the good cause limitations only apply for a three year period in certain

14  circumstances such as foreclosure, or sale.  The plain language of 26 U.S.C. §

15  42(h)(6)(B)(i), however, only points to the "subclauses (I) and (II) of subparagraph

16  (E)(ii)" and no more.  In the following subclause 42(h)(6)(B)(ii), which provides

17  that the good cause requirement must be enforceable in state court, no mention is

18  made of limiting the duration of the enforceability of the good cause requirement

19  to a three year period.  Therefore, the plain language of the statute supports the

20  Plaintiffs' contention that the good cause requirement shall be in effect for the

21  entirety of the low-income housing commitment.

22        The Plaintiffs, in turn, assert that this Court should determine that the good

23  cause eviction requirement applies to the full duration of a housing development's

24  low-income housing commitment based on IRS Revenue Ruling 2004-82.  That

25  ruling unequivocally holds that he good cause limitations of 26 U.S.C. §

26  42(h)(6)(E)(ii) applies during the entire extended low-income housing

27  commitment.  While the Court is not bound by this interpretation, it has great

28  persuasive value, and suggests that the FHA Partnership is bound by the good

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS'
MOTION FOR  SUMMARY JUDGMENT** * 7

1   cause requirement for the full 30 years of its commitment.  *See Omohundro*, 300

2   F.3d at 1068 (court should defer to agency decision based on thoroughness evident

3   in consideration, reasoning and consistency).

4          Finally, other courts to interpret 26 U.S.C. §§ 42(h)(6)(B)(i) and

5   42(h)(6)(E)(ii)(I) have found that the extended low-income housing commitment

6   must include a prohibition against eviction without good cause for the duration of

7   the extended low-income housing commitment.  *See Carter v. Maryland Mgmt.*

8   *Co.*, 337 Md. 596 (2003); *Cimarron Village v. Washington*, 649 N.W. 2d 811

9   (Minn. Ct. App. 2003).  The Court finds the analysis and reasoning of these

10  opinions highly persuasive.

11         For these reasons, the Court finds that the prohibition contained in

12  42(h)(6)(E)(ii)(I) must be in effect for the duration of the extended low-income

13  housing commitment.

14         **B.    The Existence of an Enforceable Right**

15         Plaintiffs argue that the good cause provision of 26 U.S.C. §§ 42(h)(6)

16  creates an enforceable right under 42 U.S.C. § 1983.  Section 1983 creates a

17  federal remedy for violations of federal statutes by agents of the state.  *See Maine*

18  *v. Thiboutot*, 448 U.S. 1 (1980).  Section 1983 provides, *inter alia*, that:

19         Every person who, under color of any statute, ordinance, regulation, custom,
           or usage . . . subjects, or causes to be subjected, any citizen of the United
20         States or other person within the jurisdiction thereof to the deprivation of
           any rights, privileges, or immunities secured by the Constitution and laws,
21         shall be liable to the party injured in an action at law, suit in equity, or other
           proper proceeding for redress . . . .
22
23  42 U.S.C. § 1983.  Two exceptions to this doctrine exist.  First, section 1983 may

24  be used only to remedy statutory violations where an independent statute creates an

25  enforceable right, privilege, or immunity.  *See Pennhurst State School and*

26  *Hospital v. Halderman*, 451 U.S. 1 (1981).  Second, section 1983 is not available

27  where Congress has demonstrated an intent to foreclose the use of section 1983

28  through a comprehensive remedial scheme.  *See Middlesex County Sewerage*

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS'
MOTION FOR  SUMMARY JUDGMENT * 8**

1  *Authority v. National Sea Clammers Assn.*, 453 U.S. 1 (1981).

2      The Supreme Court most recently addressed the issue of whether federal

3  statutes create rights enforceable under section 1983 in *Gonzaga University v. Doe*,

4  536 U.S. 273 (2002).  In *Gonzaga*, the Supreme Court found that a student could

5  not sue a private university for damages under section 1983 to enforce provisions

6  of the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. §

7  1232g, which prohibits the federal funding of educational institutions that have a

8  policy or practice of releasing education records to unauthorized persons.  The

9  Court found that FERPA's nondisclosure provisions failed to confer enforceable

10 rights because they (1) lack the sort of "rights-creating" language critical to

11 showing congressional intent to create new rights; (2) are concerned with the

12 "aggregate" effect of institutional policy and practice and are not concerned with

13 "whether the needs of any particular person have been satisfied;" and (3) serve

14 primarily to direct the distribution of public funds.  *Id.* at 290-91.

15     Under the *Gonzaga* standard, the provisions of 26 U.S.C. § 42 do not appear

16 to confer individual rights upon the Plaintiffs in this action.  First, the only "rights-

17 creating" language contained in 26 U.S.C. § 42(h) is several steps removed from

18 the residents themselves.  Under the statute, in order for a housing development to

19 enjoy tax credits it must enter into an agreement with the housing credit authority

20 (here, the Washington State Housing Commission) to provide certain benefits to

21 low-income residents, including prohibitions against eviction without cause that

22 are enforceable in state courts.  At most, section 42 uses Congress's taxing and

23 spending power to create a private cause of action for specific performance against

24 a taxpayer.   The legislative history of the Act supports this conclusion: the

25 "Explanation of Provisions" section of House Report 101-247 (Sept. 20, 1989)

26 explains the reason subsection (h)(6) was added and states that "[t]his provision

27 contemplates a remedy of specific enforcement in the State courts but does not

28 create a remedy under Federal Law."

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS'
MOTION FOR  SUMMARY JUDGMENT * 9**

1    Accordingly, the Court finds that the language of 26 U.S.C. § 42(h) is not

2    equivalent to the language of Title VII, cited by the Supreme Court in *Gonzaga*, as

3    classic rights-creating language: "No person in the United States shall . . . be

4    subjected to discrimination under any program or activity receiving Federal

5    financial assistance." *See Gonzaga*, 536 U.S. at 284, n. 3 (citing 42 U.S.C.

6    § 2000d).  Instead, the benefits conferred upon low-income residents through the

7    tax credit program are tangential to the agreement between the taxpayer and the

8    housing credit authority.  However, it is "rights, not the broader or vaguer

9    'benefits' or 'interests,' that may be enforced under the authority" of section 1983.

10   *Gonzaga*, 536 U.S. at 283.

11   Second, the tax credit program also has an "aggregate" rather than individual

12   focus.  Instead of requiring strict compliance on a case-by-case basis, the act only

13   requires "substantial" compliance.   Should a taxpayer fail to have an "extended

14   low income housing commitment" with good cause eviction protection in effect,

15   section 42(h)(6)(J) provides that the "[e]ffect of noncompliance" is that the

16   taxpayer will be denied the credit for the current year unless "the failure is

17   corrected within 1 year from the date of the determination."  Therefore, a taxpayer

18   could fail to have an extended low income housing commitment in effect for

19   eleven months and still comply with the Act.  In *Gonzaga*, the court focused on the

20   fact that funding recipients could avoid termination of funding through substantial

21   compliance with the FERPA; the Court found that substantial compliance

22   provisions could not demonstrate the requisite congressional intent to confer

23   individual rights.  *Gonzaga*, 536 U.S. at 288-89.

24   Finally, as in *Gonzaga*, the Federal Low Income Housing Tax Credit Act

25   serves primarily to direct the distribution of government funds rather than to confer

26   rights.  Section 42 governs the distribution of tax credits to private housing

27   developers and encourage development of low-income housing, rather than to

28   confer rights on low-income tenants or develop publicly- owned housing projects

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS'
MOTION FOR  SUMMARY JUDGMENT** * 10

1   (such as Section 8 housing).  For these reasons, the Court finds that the Act does

2   not meet the individual rights test espoused by the Supreme Court in *Gonzaga* and

3   does not provide a private right of action that can be enforced under section 1983.

4        The conclusion that no individual enforceable right exists under section 42 is

5   buttressed by the fact that Congress has created an alternate enforcement scheme

6   for the tax credit program.  The Act requires qualified housing credit agencies to

7   submit qualified allocation plans, which must outline the "procedure that the

8   agency (or an agent or other private contractor of such agency) will follow in

9   monitoring for noncompliance with the provisions of this section and in notifying

10  the Internal Revenue Service of such noncompliance . . . ."  26 U.S.C. §

11  42(m)(1)(B)(iii).  As part of this allocation plan, the Washington State Housing

12  Finance Commission requires Frenchman Hill to abide by the terms of the Low

13  Income Housing Tax Credit Program as a condition of its Regulatory Agreement.

14  The partnership must submit an annual certification to the Commission, providing

15  under penalty of perjury, that an extended low-income housing commitment was in

16  effect at all times during the preceding 12 months (See Ex. 1 to Commission's

17  Answer, §§ 4.17, 5.8).  Therefore, the housing credit agency acts as a watchdog for

18  the IRS.  The IRS, in turn, has ample auditing power to strip undeserving

19  developments of their tax credits or prosecute wayward taxpayers.

20       In their responsive briefing, the Defendants seek dismissal of the Plaintiffs'

21  section 1983 claims on the ground that 26 U.S.C. § 42 does not create enforceable

22  rights.  Since this motion is not properly raised as a cross-motion for summary

23  judgment, the Court finds it is proper to enter judgment *sua sponte*.  The fact that

24  Defendants raised the specter of dismissal, however, provides evidence that the

25  Plaintiffs have had a full and fair opportunity to "ventilate" the issues involved in

26  the matter.  In an abundance of caution, the Court grants Plaintiffs leave to file an

27  objection to the entry of summary judgment, *sua sponte*, within ten days of the

28  entrance of this order.  If no objection is received, the Court will find that no

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS'
MOTION FOR  SUMMARY JUDGMENT** * 11

1  private right of action exists under 26 U.S.C. § 42(h)(6), and *sua sponte* grant

2  summary judgment for Defendants on this claim.

3  **3.    Due Process**

4        The Plaintiffs allege that the FHA Partnership, Cambridge Management, Inc.

5  ("Cambridge"), the Housing Authority of Grant County, and John Poling, have

6  violated the due process guarantees of the United States Constitution by attempting

7  to evict the Plaintiff from his apartment without good cause.  The Plaintiffs argue

8  that low-income tenants at Frenchman Hill have a legitimate claim of entitlement

9  to the continued use and enjoyment of their homes, and public housing authorities

10  are government agencies whose actions are subject to due process requirements.

11  The Defendants assert that because Frenchman Hill Apartments is a private

12  housing complex, the FHA Partnership should not be subject to the due process

13  clause.  Moreover, the Defendants assert that the tenants do not have a property

14  interest in their tenancies because the good cause requirement is not in effect for

15  the entire long-term commitment period.

16        To survive summary judgment, the Plaintiffs must present facts

17  demonstrating (1) sufficient governmental participation and involvement to subject

18  the Defendants to the due process clause; (2) a constitutionally protected property

19  interest in not being evicted from their apartments; and (3) that they were denied

20  procedural safeguards required by due process.  *See Geneva Towers Tenants Org.*

21  *v. Federated Mortgage Investors*, 504 F.2d 483 (9th Cir. 1974).

22        **A.    Government Action**

23        As a starting matter, to prevail under section 1983, the Plaintiffs must show

24  that the Defendants' "actions were fairly attributable to the federal or state

25  government." *See Mathis v. Pacific Gas & Elec. Co.*, 75 F.3d 498, 502 (9th Cir.

26  1996) (*citing Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982)).  Action by

27  a private party, without something more, is not sufficient to justify a

28  characterization of that party as a state actor.  The Supreme Court has that a private

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS'
MOTION FOR  SUMMARY JUDGMENT** * 12

1   actor may be characterized as a state actor when there is a sufficient "nexus" or
2   symbiotic relationship between state and private activity.  *See Jackson v.*
3   *Metropolitan Edison Co.*, 419 U.S. 345 (1974); *Burton v. Wilmington Parking*
4   *Authority*, 365 U.S. 715 (1961).  Any inquiry into whether a private entity should
5   be characterized as a state actor is fact specific.  *See Howerton v. Gabica*, 708
6   F.2d 380, 383 (9th Cir. 1983).  "[S]ubstantial coordination and integration between
7   the private entity and the government are the essence of a symbiotic relationship."
8   *Brunette v. Humane Society of Ventura County*, 294 F.3d 1205, 1213 (9th Cir.
9   2002).  Courts have looked to evidence of a government entity's financial
10  interdependence with or plenary control over a private entity to determine if a
11  symbiotic relationship exists.  *Id; but see Leeds v. Meltz*, 86 F.3d 51, 54 (2d Cir.
12  1996) (holding that neither government funding nor regulation alone is sufficient
13  to confer section 1983 liability on private actors).

14          The Court finds that a symbiotic relationship exists between Grant County
15  Housing Authority and the FHA Partnership, and based on this relationship the
16  actions of the FHA Partnership are sufficiently attributable to the state.  Because
17  the Grant County Housing Authority is the general partner of the FHA Partnership
18  and manages the Partnership's day-to-day affairs, there is significant government
19  control over the private entity's actions.  As such, the daily decision of the FHA
20  Partnership are, in truth, the decisions of the state actor.  Furthermore, the FHA
21  Partnership and GCHA are financially interrelated.  GCHA is a .01 percent owner
22  of the FHA Partnership.  Moreover, the Plaintiffs point out, that the FHA
23  Partnership developed the Apartments through the sale of tax credits, monies from
24  the Washington State Housing Trust Fund, Community Development Block Grant
25  Funds, and the Federal Home Loan Bank of Seattle.  This funding package was
26  coordinated, in part, by the Grant County Housing Authority.  The Defendants
27  argue that FHA Partnership is not a state actor, because the partnership agreement
28  allows the 99.99% owner, Related Capital Partners XI, L.P., to remove Grant

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS'
MOTION FOR  SUMMARY JUDGMENT * 13**

County.  The fact that a government entity or a private party may choose to extricate itself from a symbiotic relationship, however, does not negate the existence of that relationship.

The parties do not dispute that GCHA or John Poling are state actors. Cambridge Management, Inc., however, is a management company acting at the behest of FHA Partnership as an independent contractor.  The Plaintiffs have alleged no facts sufficient to show Cambridge is a state actor.

**B.    Constitutionally Protected Property Interest**

The Plaintiffs must establish that they have a legitimate, objectively justifiable claim to the benefits of the government program.  In *Board of Regents v. Roth*, the Court held that:

> [t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

408 U.S. 564, 477 (1972).  The Supreme Court has explained that in order to have a property interest in a governmental benefit (as opposed to a right), the receipt of that benefit must be guaranteed absent cause for termination.  *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11-12 (1978).

Plaintiffs allege that they have a legitimate interest in the continued use and enjoyment of their rent-controlled apartments, because the receipt of that benefit is guaranteed, absent good cause eviction.  The Plaintiffs analogize the below-market housing provided by the Apartments to the rent subsidies provided under the Section 8 Set-Aside Program, 42 U.S.C. § 1437f.  *See Gallman v. Pierce*, 639 F. Supp. 472 (N.D. Cal. 1986) (holding that section 8 tenants had a property interest in not being evicted without good cause); *Joy v. Daniels*, 479 F.2d 1236, 1241 (4th Cir. 1973) (holding tenant in private housing receiving federal rent subsidy has a property interest in continuing his tenancy, absent good cause to terminate); and *Escalara v. New York City Housing Auth.*, 425 F.2d 853 (2d Cir. 1970) (holding

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS' MOTION FOR  SUMMARY JUDGMENT * 14**

1  public housing tenant has property right in ongoing tenancy).  As discussed *supra*,

2  the Court finds that under section 42(h)(6)(B)(i) the extended low-income housing

3  commitment must include a prohibition on eviction without good cause during the

4  entire extended use period.  Accordingly, the Court finds that because the

5  Frenchman Hill Apartment low-income tenants are entitled to continue to reside in

6  their apartments, absent good cause for eviction, they have a property right in their

7  tenancy.[2]

8      **C.    Procedural Safeguards**

9      Plaintiffs assert that Mr. Mendoza received insufficient procedural

10  protections in his without cause eviction notice.  The parties agree that the only

11  process Defendant received was a 20-day notice under Washington law that did not

12  specify a cause for his eviction.  Plaintiff Mendoza, however, does not request an

13  administrative hearing on his eviction notice, which has since been voided.

14  Instead, he requests a declaratory judgment that "[e]victions financed under the

15  Tax Credit Program are governed by the Due Process Clause of the Fourteenth

16  Amendment" and that "[d]ue process requires that tenants of Tax Credit projects be

17  informed of the reasons for eviction; that tenants of Tax Credit projects have a

18  meaningful opportunity to contest the grounds alleged for eviction; and that the

19  owner or managing agent of Tax Credit projects establish good cause prior to

20  eviction."  (*Plaintiffs' Memorandum in Support of Summary Judgment* at 17.)

21      In the public housing context, courts have applied *Goldberg v. Kelly*, 397

22  U.S. 254 (1970), to hold that public housing tenants (who are subject  to eviction

23  only with good cause) are entitled to (1) timely and adequate notice detailing the

24  reasons for a proposed termination or eviction; (2) a hearing before an impartial

25  decision maker; (3) the ability to cross-examine adverse witnesses; (4) the

26

27      [2]  This property right exists as long as the FHA Partnership participates in

28  the tax credit program.

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS'
MOTION FOR  SUMMARY JUDGMENT * 15**

1  opportunity to be represented by counsel at the hearing; and (5) a decision, based

2  on evidence adduced at the hearing.  *See Caulder v. Durham Housing Auth.,* 433

3  F.2d 998 (4th Cir. 1970); *Escalera v. New York City Housing Auth.*, 425 F.2d 853

4  (2d Cir. 1970).

5       In the case at hand, Mr. Mendoza was not provided with timely and adequate

6  notice detailing the reasons for a proposed eviction.  Instead, he was provided a

7  notice of eviction without cause.  The Court finds that by failing to provide

8  detailed reasons for the proposed eviction, the owners and managers of the

9  Apartments violated Mr. Mendoza's right to due process.

10      Beyond providing for good cause protections that may be specifically

11  enforced, the Low-Income Housing Tax Credit program does not purport to govern

12  eviction or termination procedures.  Therefore, the Court must look to the

13  procedures provided by the state of Washington.  *See Gallman*, 639 F. Supp. at

14  477.  Washington law provides a summary procedure for evicting tenants.  Wash.

15  Rev. Code §§ 59.12, 59.18 *et seq.*  Under the procedure described in section

16  59.18.380, the landlord is entitled to a show cause hearing, and at that hearing the

17  parties argue the merits of the case.  *See Housing Authority of King County v.*

18  *Saylors,* 578 P.2d 76 (Wash. Ct. App. 1978).  At this hearing, the tenant may raise

19  the affirmative defense that there is no good cause for eviction or termination.  *Id.*

20  at 874.  Other states have allowed tenants to raise the defense of absence of good

21  cause even if the good cause requirement is not explicitly listed in the extended

22  long-term housing commitment.  *See, i.e.*, *Carter v. Maryland Mgmt. Co.*, 835

23  A.2d 158 (2003); *Cimarron Village v. Washington*, 649 N.W. 2d 811 (Minn. Ct.

24  App. 2003).  Accordingly, with the exception of the notice and contents of the

25  eviction notice, the Washington statutes provide adequate procedural safeguards to

26  Mr. Mendoza.

27  **4.    Declaratory Relief Regarding Propriety of Tax Credits**

28       The Plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201 and

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS' MOTION FOR  SUMMARY JUDGMENT** * 16

Federal Rule of Civil Procedure 57 that:

b.    Agreements prohibiting the eviction or termination of tenancy without good cause and meeting the other requirements of 26 U.S.C. § 42 (h)(6) must be in effect before tax credits can be allowed under the Tax Credit Program.

c.    The Defendants' Regulatory Agreement fails to comply with 26 U.S.C. § 42(h)(6) and fails to satisfy a mandatory condition precedent for the allowance of tax credits because it fails to include express language prohibiting the eviction or termination of tenancies of tenants of any low-income units other than for good cause.

d.    The Defendant FHA is not eligible to receive tax credits under the Tax Credit Program unless and until it and the Commission have in place an agreement that prohibits the eviction or the termination of tenancy (other than for good cause) of any tenant of any low-income unit.

(*Plaintiffs' Memo.* at 17). The Plaintiffs are third-party beneficiaries of the Low-Income Housing Tax Credit Program and, therefore, have no standing to challenge tax determinations by the IRS.  *See Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26 (1976).  Accordingly, the Court finds that Plaintiffs are not entitled to the above declaratory relief as a matter of law.

**5.    Injunctive Relief**

The Plaintiffs also seek injunctive relief (1) prohibiting eviction of Plaintiff Mendoza or other residents of the Apartments without good cause; (2) requiring the Commission and the FHA Partnership to amend their Regulatory Agreement to prohibit the eviction of a low-income tenant without cause; and (3) prohibiting the Commission from allowing tax credits for the Apartments unless and until the FHA Partnership has in place an agreement that expressly prohibits the eviction or termination of tenancy (*Plaintiffs' Memo*. at 18).   "The requirements for the issuance of a permanent injunction are the likelihood of substantial and immediate irreparable injury and the inadequacy of remedies at law." *American-Arab Anti-Discrimination Comm'n v. Reno*, 70 F.3d 1045, 1066-67 (9th Cir. 1995) (quotations and citations omitted).

The Plaintiffs assert that they are under a substantial and immediate threat of eviction, and the remedy provided at law is inadequate because the mere filing of

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS' MOTION FOR  SUMMARY JUDGMENT \* 17**

an unlawful detainer action carries with it the stigma of eviction and creates
negative rental history.  The Plaintiffs have not shown that Mr. Mendoza or any
other Plaintiff is under threat of immediate eviction.  Therefore, the likelihood of
any injury is speculative, at best.  For this reason, the Court denies Plaintiffs'
requests for a permanent injunction.

For the remaining injunctive relief requested, the Plaintiffs do not present
argument on the likelihood of substantial and immediate irreparable injury or the
inadequacy of remedies at law.  Therefore, the requested relief is denied.

Having reviewed the record, heard from counsel, and been fully advised in
this matter, **IT IS HEREBY ORDERED** that:

1.  Plaintiffs' Motion for Summary Judgment (Ct. Rec. 31) is **DENIED IN
PART AND GRANTED IN PART**.

2.  The Court holds that, under the circumstances of this case, the good cause
eviction of low-income tenants from the Frenchman Hill Apartments is governed
by the Due Process Clause of the Fourteenth Amendment.  Due process requires
that Mr. Mendoza be provided with timely and adequate notice detailing the
reasons for a proposed termination or eviction.

3.  The Court grants Plaintiffs **LEAVE** to file an objection **within ten days
of this Order** to a *sua sponte* entrance of summary judgment in favor of
Defendants Washington State Housing Commission and Kim Herman summary
judgment on Plaintiffs' claim to a private right of action under 26 U.S.C. §
42(h)(6).  Plaintiffs' briefing shall not exceed 10 pages in length.  If no objection is
filed, the Court shall enter an order granting summary judgment for Defendants on
this claim.  Defendants need not file a response unless the Court orders them to do
so.

//

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS'
MOTION FOR  SUMMARY JUDGMENT * 18**

Order and forward copies to counsel.

**DATED** this 20th day of January, 2005.

s/  ROBERT H. WHALEY
UNITED STATES DISTRICT JUDGE

Q:\Civil\2003\Mendoza\mendoza.sj.ord.2.wpd

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS'
MOTION FOR  SUMMARY JUDGMENT * 19**